Henry W. Lengyel, J.
This claim is for the appropriation of claimant’s land pursuant to section 30 of the Highway Law, as made applicable by title 1 of article 5 of the Public Authorities Law, which proceeding was described as Power Authority of the State of New York, Niagara Power Project, Madison County, Niagara-Adirondack Tie Line, Town of Sullivan, Map No. MS 960, Parcel No. 964. Said map and description was filed in the Department of State on April 6,1960; in the Madison County Clerk’s office on November 17, 1960; and, personal service was made on the claimant on December 12, 1960. The claim was filed with the Clerk of the Court of Claims and the Attorney-General on August 31, 1962 and it has not been assigned or submitted to any other court or tribunal for audit or determination. We adopt the description of the appropriated property as shown on said map filed in the Madison County Clerk’s office.
Claimant was the owner of subject property by reason of a deed dated October 13, 1949, from Robert K. Hier, grantor, and which was recorded in the Madison County Clerk’s office on October 17, 1949, in Liber 428 of Deeds at page 485.
Before the appropriation subject property consisted of 164.5± acres with 63.7± acres north of Route 31 and south of Oneida Lake and 100.8± acres south of Route 31. The 63.7± acre parcel, which shall hereafter be referred to as the north parcel, had 1568± feet frontage on Route 31; 1850± feet frontage on Oneida Lake; a west line of 2198± feet; and, an east line of 1112± feet. In this area there were two grass airplane runways, one 1,550 feet by 150 feet and the other 1,750 feet by 150 feet. There were also a marina and launching seaplane base as well as a marina with piers for cruisers and boats on the *680 lake front in the bay. This area was immediately to the west of Lakeport Bay. The buildings located on the north parcel consisted of a two- and two and a half-story frame house in fair condition, a 66% by 66% airplane hangar in poor condition, and a two and a half-story frame barn with a small one-story concrete block building attached to the front of the bam in fair-to-good condition. The barn with addition was, at one time, used for storage and repair of airplanes but at the date of the appropriation was used for the sale, storage and repair of boats. The State’s appraiser did not value the buildings as he did not consider they had been damaged by the appropriation. The claimant’s appraiser valued the buildings at $44,200 which he consequentially damaged 10%. We accept his before value of $44,200 but do not find that said buildings were damaged by the appropriation. Both appraisers agreed that the appropriation did not damage the land or land improvements. We find a total fair market value both before and after the appropriation for the north parcel of $139,882.
The 100.8± acre parcel, hereinafter referred to as the south parcel, had 1,360± feet frontage on Route 31 directly across from the north parcel; a west boundary line of 1,945± feet; a south line of 2,721± feet and an angle of 255± feet to Fly Road; an east boundary line of 1,232± feet along Fly Road; a north boundary line parallel to Route 31 for 749± feet; an east side line of 445± feet; north line parallel to Route 31 for 206± feet; and, another east line of 422± feet to Route 31. There were no buildings located on the south parcel. The claimant’s appraiser stated there were two airplane runways laid out on the south parcel. We consider that this statement reflected the superb imagination of claimant’s appraiser which we believe might have been influenced by claimant’s imagination. We might note that compounded imaginations create difficulties in arriving at fair market values. We have given no weight to claimant’s Exhibit 8 insofar as it indicated two paper runways on the south parcel.
The State’s appraiser presented a damage figure of $3,167 and the claimant’s appraiser a damage figure of $27,640, which included the aforesaid alleged consequential damage to the north parcel. The disparity in damage figures was caused by the different approaches to highest and best use. Claimant contended that the highest and best use before the appropriation was for airport and marina purposes for both parcels of land. However, claimant’s proof fell far short of establishing such a highest and best use. We find that the highest and best use before and after the appropriation for the north parcel was *681 strip development of the Route 31 frontage to a depth of 200 feet; development of the Oneida Lake frontage to a depth of 200 feet, and agricultural of the interior land. We find that the highest and best use before and after the appropriation for the south parcel was strip development to a depth of 200 feet for the Route 31 and Fly Road frontage, and agricultural use of the interior land.
There is no question but that there was a small airport or air park operation on the north parcel when claimant bought this property in 1949 and in 1960, when the appropriation was made, that there were two grass airplane runways located on the north parcel as well as a dilapidated hangar. However, the history presented to the court of the period 1949 to 1960 drew a clear and almost black picture of the economic strength of small airport operations in this area and particularly relative to this alleged airport. If we can believe the claimant he did nothing but lose money in his airport operations. In 1956 he moved his operation to Fulton Airport in Oswego County and did not move back to the Lakeport Airport until the Summer of 1960, after he knew of the appropriation and the fact that power lines were going to cross the south parcel of land. During this period, 1956 to 1960, the Lakeport Airport was operated in a haphazard manner and to a negligible extent. It is the court’s opinion that claimant moved his operation back to Lakeport with the intent of buttressing his claim against the State of New York. On at least two occasions during the trial claimant was asked when he first learned of the appropriation and his answer was December 12, 1960, some months after his move back to Lakeport. The State then subpoenaed an attorney who had represented this claimant prior to the attorneys of record in this claim. The State then marked for identification (Exhibit Q) a letter from this attorney to the Power Authority of the State of New York dated May 27, 1960. We received this letter in evidence over the objection of privileged communication. Certainly such privilege does not control over statements made in a letter of negotiation from an attorney to an adverse party. In Matter of Stefano v. C. P. Ward, Inc. (19 A D 2d 473, 475) it was stated that “ The conversations and agreements between lawyers adverse to each other are not privileged and must be disclosed if they are material ”. Said letter, Exhibit Q, stated: “Re: Niagara Power Project * * * Map No. MS960 Parcel No. 964 * * * We would like very much the opportunity to discuss the condemnation proceedings now pending against the said properties prior to the time any further steps are taken.” After *682 the receipt of this letter the claimant suddenly remembered that he had known of the condemnation prior to December 12, 1960, in fact by April of 1960. He requested an opportunity to return to the witness stand, which was granted, and testified that he had been “mistaken” in his prior testimony. This alleged mistake was in line with this witness’ evasive demeanor on cross-examination and the lack of records, loss of records, and accidental destruction of records when they were records in which the State was interested. It is our opinion that the claimant tried to deceive this court. So that the record is clear, it is also our opinion that this misguided action was without the knowledge, consent, or approval of his trial counsel or the attorneys of record or the subpoenaed attorney.
We find the claimant’s property was zoned for airport use or to put it more accurately, when the Town of Sullivan adopted a zoning ordinance in 1957, it permitted such use to continue for subject land. In many areas of the State and in most appropriation cases zoning requirements are of vital significance. However, because property is zoned to a particular use it does not mean that this court must find such was the highest and best use for said property at the date of appropriation or for the reasonably foreseeable future. In the subject claim the proof did not establish a highest and best use of airport. If some entrepreneur should ever decide to establish an airport in this area, it is our opinion that flat land would be available in quality and quantity and the zoning in the Town of Sullivan would not be a hindrance.
Subject proceeding appropriated 18.03± acres of claimant’s property by applying a permanent easement to such acreage for power transmission line purposes as set forth in the filed appropriation and the filed clarification map. There were no buildings in the appropriated parcel. Said parcel was essentially rectangular in shape with a width of about 300 feet and an approximate length of 2,550 feet. It extended at a slight diagonal across the south end of the south parcel, from Fly Road to the west boundary of claimant’s property. It is our opinion that the frontage on Fly Road for 304.8± feet to a depth of 200 feet was 100% damaged because of the trasmission line tower located in this area. The remainder of the easement area was damaged 90%. The remaining land was not damaged by the easement as clarified. We find that the fair market value of the south parcel before the appropriation was $31,711 and that its. fair market value after the appropriation was $28,267. Claimant has been directly damaged by $3,444. We have viewed the property.
*683 We find that the use to which the Power Authority of the State of New York intends to put the property subject to the casement is transmission line uses of the type to which it is presently being put. If the Power Authority or the State of New York by some affirmative act terminates or interferes with this claimant or any successor owner’s rights in regards to the lands covered by said easement; or, puts said lands to greater use than the use stated in the appropriation maps as clarified by the filed resolution of the Power Authority, that such shall be considered a de facto appropriation for which any owner might be entitled to compensation. (See Jafco Realty Corp. v. State of New York, 14 N Y 2d 556; Clark v. State of New York, 15 N Y 2d 990.)
Claimant is awarded the sum of $3,444 for all direct damages, with interest thereon from November 17, 1960 to May 17, 1961 and from August 31, 1962 to the date of entry of judgment herein.
The award to claimant herein is exclusive of the claims, if any, of persons other than owners of the appropriated property, their tenants, mortgagees and lienors having any right or interest in any stream, lake, drainage and irrigation ditch or channel, street, road, highway or public or private right of way or the bed thereof within the limits of the appropriated property or contiguous thereto; and is exclusive also of claims, if any, for the value of or damage to casements and appurtenant facilities for the construction, operation and maintenance of publicly owned or public service electric, telephone, telegraph, pipe, water, sewer and railroad lines.